Thank you, Your Honor. Andrew Parnes appearing on behalf of Mr. Ponce-Ulloa. May it please the court. This case involves a 54-year-old gentleman who has one prior misdemeanor record before this case and who sold about half a pound of methamphetamine over a two-month period in 2016 and received a 20-year sentence based on that. We've raised a number of issues regarding methamphetamine. Let me begin with the drug quantity calculations and then proceed from there. The drug quantity calculations are really based on puffing statements by Mr. Ponce-Ulloa. The amount of drugs that were sold were 235 grams total over this two-month period. And as a result of that, because they were tested as actual, he wound up with a level 32. In addition, the PSR recommended that two pounds of methamphetamine be added simply because Mr. Ponce-Ulloa said at one time that he had two pounds. Another pound was added to that simply because the officer said he saw what he thought was a pound of methamphetamine at Mr. Ponce-Ulloa's house during one of the sales. I certainly held that a court could rely on testimony about drug quantities even in the absence of any physical evidence. So why was the court not allowed to rely on testimony about Mr. Ponce-Ulloa's statements or their own observation here? Your Honor, I think it can rely on testimony, but they have to be supported and there has to be a preponderance of the evidence at least that the statements are accurate, that the statements should be believed by the court. There's no support for these statements other than Mr. Ponce-Ulloa's alleged statements. And there's no question, it's not a dispute that those statements were made, but the question is if somebody says I can get you a hundred pounds of methamphetamine, should we then under the guidelines say that that's a hundred pound methamphetamine case when in fact the four transactions were for very small amounts? So he made an admission, I guess we call it admission against interest. What do you rely on to say that the court could not rely on that as it came up in this case? Your Honor, I think the court in essence can necessarily rely on it if there is support for that. So for example, if there is support that a defendant is selling pounds of methamphetamine and they find pounds of methamphetamine and the statement is well I can sell five pounds, but you've only sold three pounds, that may be supported. But here the sales are very small, 11 grams one time, 55 grams another time, 113 grams and then 55 grams. So they're very small sales and so I don't think there is a support in the record. So you don't challenge the calculation of the pure meth that Mr. Ponce sold? I think it was 235 grams, is that right? Yes, I mean that was what was tested. We only challenged that based on the disparity between actual and mixed methamphetamine. So that was the largest amount, right? That was the largest amount, that would be the equivalent of over 4,000. But what the PSR said was even if you discounted that, there was still over 3,000 drug equivalent because of his statements that were made. Opposing counsel also argues that even if there was an error, it would be harmless because the ACE offense level would still be 32. What's your response to that? Well, it would only be a level 32 if you excluded the statements that are made. And you only look at the actual amounts that are sold. The offense level on the actual versus the methamphetamine would put him at a level 26. If you included some of the other amounts that were sold by others, it might put him at a level 28. It would not be harmless error. Okay. After the drug quantity was determined, the court also then found that a gun was possessed. Argument on that is that the gun was possessed eight months after the transactions in this case. They're not related to the criminal activity. And therefore, it was error to give a two-level enhancement for that gun. It was found in his house. There were other people living there. But it was in a search warrant eight months after the actual transactions in this case. And therefore, it was error to enhance the sentence by two levels. Furthermore, in regard to the Clavo issue and the premises, there just is not sufficient evidence that he had a premises that was being used to stash the drugs. He indicated that somebody brought him the drugs, but that's not evidence of it. The discussion of the Clavo came in a situation where he was outside his house, and all of the transactions were made at his house. I thought he stated that he had a Clavo or stash house. And then at trial, he said, oh, I was under duress when I said that. Absolutely. Here's one of the problems in that. Clavo, it's a Spanish term. He testified in Spanish. Everything was translated for him. So when he was asked about a stash house, he was asked about a Clavo. The only evidence we have about what a Clavo is is from the agent who said a Clavo is someplace where it's hidden. It could be a car. It could be underground. It's not necessarily a premises. So when he's asked about a Clavo, he says yes. He then says that's what I was told to say. But there's no indication that that is a premises where that is. And so I think that that should not have been added, the two points there. And finally, I think the leader issue is clear from the record. There is no showing that he was a leader, organizer, supervisor of anyone else. He's a street-level supplier. When he went away, he said you could find somebody else to get your drugs from, and they did. That's not necessary that he's supervising that person. If people know on the street, I know someone else, go get the drugs from them. Was there any evidence or further information presented at the sentencing on that announcement? No, there was no evidence presented at the sentencing on any of these issues. It was just submitted on our argument. And if there are no further questions now, I'd like to reserve my final two minutes for rebuttal. You may do that. Thank you. We'll hear from the government. May it please the court. My name is David Robbins, and I have the privilege of representing the United States. Counsel, I'd like to start where we just ended up. Speaking only for myself, I had some concerns about the leader or organizer enhancement. If I understand the record correctly, there is only a very, very brief piece of testimony in which the agent says that he talked to Diaz, and Diaz, quote, he told me he had been told to contact me, which he did, and we arranged for a meeting. And is there anything else other than that, you know, three questions and answers in the record that demonstrates that the defendant here caused, you know, was a leader or organizer or justifying this enhancement? Certainly, Your Honor. The defendant not only organized for the distribution of methamphetamine in his absence, but when he came back from Mexico, he met with an undercover detective on March 16th of 2017. And in supplemental excerpts of records 408 and 414, you'll find evidence where he was attempting to get him to partner up with them and also agreed to provide a front. You've got to give me the names. The he and the he doesn't help me. I apologize, Your Honor. Detective Bustos was the undercover detective, and he would be the defendant. The defendant contacted the undercover detective, and he offered to provide the undercover detective a front of methamphetamine up to an entire pound. That is management. That is organization. That is supervision. And on addition, on 414 of the supplemental excerpts of record, there is explicit statements in which they wish to partner up as business. So, yes, you have the Diaz Arraza on 399 to 400 regarding distribution of methamphetamine in his absence. You also have him coming back in March of 2017, attempting to set up another distribution net. And of course— There's a question about that. If—let's leave Mr. Diaz out of it for the moment. If the only evidence about organizer and leader is with an undercover agent who doesn't end up doing anything, is that sufficient for an organizer or leader enhancement, or does there have to be actually another person who is involved in the criminal activity? Your Honor, my answer to that is no. It doesn't require actual. He was leading. He was organizing methamphetamine distribution. What's your best case saying that organizing or leading an undercover agent by itself is sufficient for this enhancement? I cannot present a case to Your Honor, but I can provide facts on this record. In evaluating— So why—if there are no cases that permit that to count as an organizer and leader, what is the relevance of his conversations with the undercover agent? Well, the standard for the district court to apply is a preponderance of evidence. His review is done for clear error based on the totality of facts in the record. In addition to the March 2017 meeting and his providing methamphetamine in the absence, we also have the 2014 distribution in March. During that meeting, Your Honor, the defendant supervised the distribution of methamphetamine at a gas station in Idaho. That supplemental excerpt of record— Supervised in what way specifically? What is your description of supervision in that incident? In that incident, and this is located at supplemental excerpts of record 359 to 370, specifically on page 366, there was a methamphetamine transaction that was set to occur. Now the runner, who was not the defendant, but somebody working at the defendant's behest, said that the undercover officer had to supply the money before the defendant, in this case, would give him the methamphetamine. He was saying in the transcript other than that he was taking the passenger. I didn't see any evidence relating to his role in the transaction whatsoever. Where would I look to find his role in the transaction? Specifically, page 366 on supplemental excerpts of record. It has reference to the defendant acting sketchy and requirements regarding the distribution of methamphetamine having money go in the front. So, Your Honors, what I am asking you to do is look at the totality of the record. And if you look at the totality of the record between the March 2014, his actions in 2016, and his actions in 2017, and in applying 3B1.C4's notes, he was organizing the distribution of methamphetamine. He was recruiting accomplices. On the totality of facts before this court, we believe that the judge did not clearly err in finding this by preponderance of the evidence. Let me ask you also to respond to counsel's argument about clavo, that it doesn't necessarily mean a premises, but it could mean a car or it could mean, you know, a hidey hole in the woods. Yes, Your Honor, in regard to the clavo, with all due respect for counsel, a common fallacy is that he'll isolate portions of the record without addressing the totality of the record. And in this record, specifically on supplemental excerpts of record 331, the defendant was very clearly cross-examined about a stash house. He admitted to having a stash house or saying that at least, but claiming it was given under duress. Additionally, at the defendant's sentencing. I think that begs the question because he admitted that he had a clavo. But then the question is, what does that mean? I don't speak any Spanish, and so it's all dependent on. So if I have a clavo and it's a hollowed out tree, that's not a premises. So I don't know what a clavo is. That's what I'm getting at. I'm sorry, Judge, I fell into stating that off the record clavo is Spanish for nail. But on the record at 331, when he was cross-examined, the specific phrase stash house was used. And in cross-examinations using the specific phrase stash house, he responded. Yes, I said that. In addition, and very tellingly, is that the district court level when the defendant filed his objections. He didn't say that the clavo was ambivalent or there wasn't evidence. He stated that in his objections that he admitted to having a stash house. He just claimed that it didn't exist because he just made that up under duress. So even in his written submissions to the district court, he admitted stash house using that specific phrase. So the question is, did the judge clearly err? And no, between the defendant's statements under oath, his statements about duress, which were so handily rejected by the jury, his lack of credibility, the specific questions regarding stash house, along with all the corroboration, the weight, the leadership, the length, the judge had preponderant evidence to find that he maintained a premises. There was no ambiguity as to stash house when he was cross-examined, and the judge certainly had a confession from the defendant regarding what he said. And that statement is corroborated by all the facts in the record with the weight, the length, and the leadership. With that, Your Honor, the gun. Council objects to consideration of the firearm. 2D1.B1 says that if a gun was possessed, you apply a plus two level enhancement, but it's not during the commission of the offense. It's during relevant conduct. The judge can consider the entirety of the record, and he is permitted to draw inferences from that record. And in this record, there are several facts that gave rise to reasonable inferences and a preponderance of evidence for the judge. As mentioned, the weight, the length, the leadership, the natural inferences that guns and drugs go hand in hand all matter here. But most tellingly was that March 2017 meeting. Judge, I encourage you, if you look at the supplemental excerpts of record, that was a forward-looking meeting. They were looking forward to future drug transactions. They were looking forward to fronting, to partnering up, to reestablishing a drug distribution network in Idaho. 53 days later, when the search warrant was executed, they found the gun. The judge was reasonable in inferring that this gun was possessed during relevant conduct for drug transactions, and it falls within the 59-day time period as allowed in pits. Now, last comment, I see my time is dwindling, regards the weight. Council's argument ignores the relevant conduct in this case. The relevant conduct allows for these weights. Those instances were proven by preponderance of the evidence and a thorough review of the supplemental excerpts of record given by the defendant and given by the undercover detectives. These weights were properly attributed to him, but there is also a concern. The only way that the impact of the guideline matters is if that you were to hold that the mixture and the purity do not apply. Simply speaking, even if the defendant were to exclude all of the rights, if the purity guideline applies, we are at the same offense level. And the judge did not abuse his discretion and he did not clearly err. With that, your honors, I see that my time has expired. If there are no other questions, I will respectfully submit and ask that you affirm the district court. Thank you very much, counsel. We will hear again from Mr. Parnas on the remodel. Thank you, your honor. Let me start with the weights. I conceded in our briefing that if the other discussions and the statements that Mr. Ponce-Aloa made, then it would not affect the outcome. However, once those are excluded and they're not relevant conduct, the relevant conduct, even at the greatest thing, would be a 79-gram transaction and then a 116-gram transaction. The pounds come in only from his statements and puffing. But if those are excluded, then the distinction between actual and mixture of meth should be decided by this court. The objection was made very specifically in the objections to the PSR. They were raised again at the hearing. The court basically in saying, you know, do we have a 10-to-1 ratio? Here's a situation where he would start at an offense level 26. That would put him way below even the minimum mandatory in this case, but for the actual weight of it. And the cases that I've cited that are certainly not binding on this court, but the district judge didn't even consider them. And I think it would be appropriate on remand to have the judge consider the effect of, if any, of the distinction. And other district judges in Idaho have looked at this and said there is a disparity and the disparity is unwarranted. The district judge didn't, in this case, didn't address that issue at all. In essence, he either ignored it or decided that because there was other amounts of drugs involved that have put it over the limit. But even if you look at lower limits, even if you don't go to a level 26, you might go to a level 28 or even a level 30, which makes a significant difference for Mr. Ponce-Alo. We support a reverse for the basis that we set forth. Thank you very much. Thank you, counsel. We appreciate very much the helpful arguments from both of you. The case just argued is submitted and we will be adjourned for this morning's session.
judges: Tashima, Graber, Ikuta